UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
STUART DOWNER,

          Plaintiff,

    v.

INLANDBOATMEN'S UNION OF THE
PACIFIC,

          Defendant.
_____

No. C10-1251RSL

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

      This matter comes before the Court on the parties' motions for summary judgment (Dkt. # 19 and Dkt. # 27). Plaintiff, a former employee of Inlandboatmen's Union of the Pacific, asserts that defendant had a duty to offer its employees short and long term disability insurance coverage and that its failure to do so breached a contractual obligation and violated Washington's wage statutes.[1] Both parties seek judgment as a matter of law on plaintiff's claims.

      Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-

---

[1] Although the parties make arguments regarding promises of specific treatment and plaintiff's reliance thereon, plaintiff has not asserted an equitable claim for relief in his complaint.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," however. Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, having considered the arguments of counsel, and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## FACTUAL BACKGROUND

Defendant Inlandboatmen's Union of the Pacific ("IBU") is a national labor organization representing workers in the towing, tugboat, and ferry industries. The IBU adopted a Constitution in 1971 that establishes the union's internal structure and governs its relationships with members, employees, and another affiliated labor organization. In October 1997, delegates to the seventeenth convention of the IBU voted to add Article 12(H)(2) to the Constitution. The new provision read:

> The Union shall offer short term and long term disability insurance at no cost to all salaried officers & patrolmen of the Union. This benefit is to provide some financial assurances in case of unexpected illnesses or long term injuries which would result in any official being unable to perform their duties. The salaried officers & patrolmen pay shall be reduced to the amount necessary to provide such

coverage.

The IBU has shown that the inclusion of "at no cost" in the first sentence of Article 12(H)(2) was a scrivenor's error: that language was expressly stricken from the provision after discussion on the floor of the convention and before the provision was presented to the delegates for a vote.

Following the 1997 convention, the IBU worked with a broker in its attempts to find reasonably-priced insurance that would supplement the benefits already provided to its employees. To the extent policies were identified, they required 100% participation and would cost approximately $100-$150 per employee per month. When the available policy options were presented to a group of salaried officers and patrolmen in the Seattle area, each was rejected by at least one employee. With salaried officers and patrolmen opting out of the self-pay program mandated by Article 12(H)(2), the IBU concluded that a group disability policy could not be obtained or would be cost-prohibitive.

Plaintiff was employed by the IBU as a business agent and patrolman starting in December 1998. He had supported the adoption of Article 12(H)(2) while a member of the IBU and made inquiries regarding the IBU's efforts to obtain coverage after he became an employee of the union. Plaintiff made it clear that he wanted the protection afforded by short and long term disability policies and would be willing to contribute to the cost of such a plan. When Terri Mast, the Secretary-Treasurer of the IBU, told plaintiff how much disability policies would cost the employees, he requested a copy of the plan document or a summary thereof. The other employee present at this meeting indicated that the cost was high.[2] It does not appear that the IBU actually selected a policy or provided the requested plan documents to plaintiff.

---

[2] This is the only conversation regarding the disability policies about which plaintiff seems to have a specific recollection. Plaintiff, Terri Mast, and Alan Coté have all provided certain details regarding a meeting in which the self-pay option was discussed, and it is possible that this conversation and the meeting of salaried officials and patrolmen discussed in the previous paragraph are the same event.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT             -3-

In 2005, plaintiff sought medical advice regarding changes in his behavior and was diagnosed with post traumatic stress disorder ("PTSD"). In 2006, plaintiff and Alan Coté, the IBU president, investigated additional coverage options by meeting with a second broker. At the end of the meeting, the broker indicated that he was not interested in attempting to place the coverage for the union primarily because the group size (approximately 22 individuals) was too small.

At the twenty-first convention of the IBU held in October 2009, plaintiff argued in favor of amending Article 12(H)(2) to delete the self-pay requirement. Although the amendment would require the IBU, rather than its employees, to expend funds to purchase the disability policies, the amendment was not brought before the IBU's Finance Committee prior to the convention and was therefore not included in the budget that was approved by the convention delegates. The amendment passed, such that Article 12(H)(2) now reads:

> The Union shall offer short term and long term disability insurance at no cost to all salaried officers & patrolmen of the Union. This benefit is to provide some financial assurances in case of unexpected illnesses or long term injuries which would result in any official being unable to perform their duties.

Between October and December 2009, the IBU investigated coverage options with Aflac, but none of its products met the needs of the salaried officers and patrolmen. Aflac indicated that it would be offering a new product in January 2010, which its representative thought would satisfy the IBU. The IBU halted its search for a few weeks until it reviewed the new Aflac product at the end of January. When it was deemed unsuitable, the IBU contacted other providers only to find that the size and make-up of the proposed group was not attractive to insurers. One of the insurers suggested that the IBU work with Jeffrey Kerns, an insurance broker with Pacific Advisors. Mr. Kerns identified a long term disability policy offered by Standard Insurance that would meet the needs of the salaried officers and patrolmen, but the insurer needed information regarding how the group was selected and the nature of the work union employees performed.

Once a policy was selected in April 2010, the Finance Committee had to approve the additional expenditure before it could be purchased. Mr. Kerns attended the May 2010 meeting of the Finance Committee to explain the available options. The Committee agreed to adjust the budget, a policy was purchased, and it become effective on July 1, 2010.

In the interim, plaintiff's health deteriorated. Plaintiff had been receiving regular medical treatment for his PTSD since 2007, but needed a workplace accommodation by the end of that year. In February 2010, plaintiff requested a medical leave of absence. Plaintiff was allowed to use his sick leave, but the IBU refused to provide an additional five months of paid medical leave. Plaintiff then announced that he would "use the disablty Ins. That the union is to have (and has been in our governing document for many years) or longshore harbor workers disablty Ins." Decl. of Mark Davis (Dkt. # 28), Ex. 14 (spelling and punctuation as in original). The IBU responded by acknowledging the directive of the membership to provide disability insurance to its employees, but noting that as of March 8, 2010, "we have not yet accomplished the goal of identifying and obtaining such a benefit at an acceptable price." Id., Ex. 16. In April 2010, plaintiff's mental health counselor notified the IBU that plaintiff was totally and permanently disabled and could not return to work when his sick leave expired. His employment with IBU terminated on April 12, 2010.

## DISCUSSION

Plaintiff's claims are based on his assertion that the IBU breached its promise to obtain disability insurance coverage for its salaried officers and patrolmen. To prevail on a contract claim, plaintiff must show a promise, a breach of that promise, and damages resulting from the breach. Fidelity and Deposit Co. of Md. v. Dally, 148 Wn. App. 739, 745-46 (2009). The Court will assume, for purposes of this motion, that employees of the IBU are third-party beneficiaries of the promises made and commitments set forth in the IBU Constitution and are therefore entitled to enforce those promises. See Moore v. Local Union 569 of Int'l Bhd. of

Elec. Workers, 989 F.2d 1534, 1545 (9th Cir. 1993).

Between October 1997 and October 2009, the IBU promised to:

> offer short term and long term disability insurance . . . to all salaried officers & patrolmen of the Union. This benefit is to provide some financial assurances in case of unexpected illnesses or long term injuries which would result in any official being unable to perform their duties. The salaried officers & patrolmen pay shall be reduced to the amount necessary to provide such coverage.

Plaintiff argues that the IBU breached this promise because it did not offer a short term and long term disability insurance policy to him. The original version of Article 12(H)(2) is not quite that clear and unambiguous, however. The provision states that the insurance policy should provide some financial security to ill or injured employees, thereby suggesting that the coverage should neither duplicate that which was already available through other sources nor be so expensive that its purchase would cause financial hardship. The original version of Article 12(H)(2) does not specify whether the IBU is to offer a group policy or individual policies, nor does it define what it means to "offer" insurance. Finally, the provision places the burden of paying for the coverage on the salaried officers and patrolmen, but lacks procedures to ensure that the amount is reasonable and/or that the employees are willing and able to make the payments.

Issues raised in suits brought under the jurisdictional grant of § 301 of the National Labor Relations Act are "to be decided according to the precepts of federal labor policy." Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962). Because federal courts should avoid interfering with intra-union affairs, "[a] union's interpretation of its own rules, regulations, and constitution is entitled to a high degree of deference." United Bhd. of Carpenters and Joiners of Am., Lathers Local 42-L v. United Bhd. of Carpenters and Joiners of Am., 73 F.3d 958, 961 (9th Cir. 1996). Given the avowed purpose of Article 12(H)(2) and its inherent ambiguities, the Court finds that it was reasonable for the IBU to identify group, rather than individual, disability policies, to present (*i.e.*, to "offer") the coverage and its associated costs to

its employees, and to give them a choice before saddling them with a significant monthly expense. The IBU's course of conduct reflects a reasonable interpretation of the provision,[3] and plaintiff has not suggested, much less shown, that the union acted in bad faith. Lucas v. Bechtel Corp., 800 F.2d 839, 850 (9th Cir. 1986). The Court will not, therefore, disturb the union's interpretation of the original Article 12(H)(2). Plaintiff cannot establish a breach of that provision.[4]

In 2009, the IBU took upon itself the obligation to pay for the promised disability policy. The IBU recognized that its employees' willingness and ability to pay for the coverage was no longer an issue and began shopping for group policies that would provide the required benefits. Plaintiff appears to be arguing that defendant breached the amended version of Article 12(H)(2) because it did not offer a policy soon enough after the convention to apply to his situation.[5]

---

[3] Plaintiff argues that no "interpretation" of Article 12(H)(2) occurred in this case. The IBU Constitution gives the IBU President the power to interpret and apply the Constitution and states that the President's interpretation "shall be binding unless and until reversed or modified by the Executive Council." Article 12(B)(5). The Constitution does not require a formal process to be followed when interpreting the Constitution, nor must the interpretation be reduced to writing or otherwise recorded in order to be effective. Nothing in the Constitution would have prohibited a disgruntled employee from requesting that the Executive Council review the President's interpretation of Article 12(H)(2) and/or his decision not to purchase a disability policy. See Article 11(B).

[4] Had plaintiff asserted an equitable claim for coverage under the original version of Article 12(H)(2), that claim would fail for lack of justifiable reliance. When plaintiff became an employee of the IBU, he inquired regarding the procurement of the disability policy and was aware that it had not been purchased. By his own admission, plaintiff knew that the IBU had not obtained a policy at any point prior to October 2009. To the extent plaintiff chose to rely on a disability policy that he knew did not exist, such reliance was unreasonable and unjustified.

[5] In his written submission to the Executive Council of the IBU, plaintiff argues that amended Article 12(H)(2) "does [not] give the Union a period to comply, but became effective at the close of the convention." Decl. of Mark Davis (Dkt. # 28), Ex. 19 at 3.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -7-

Even if the Court assumes that Article 12(H)(2) required immediate compliance, plaintiff's breach of contract claim fails for lack of damages. The disability policy that the IBU ultimately purchased excludes from coverage any mental or physical condition regarding which plaintiff consulted a licensed medical professional, received medical treatment, services, or advice, or took prescription drugs or medications during the ninety days before the insurance policy became effective. Plaintiff's insurance expert concedes that such exclusions are standard and that the goal is "to limit adverse selection, where one procures insurance because one knows that one is likely to need it, thereby adding risk to the pool in excess of premiums." Second Decl. of Mark Davis (Dkt. # 33), Ex. A at ¶ 22. It is undisputed that plaintiff consulted a licensed medical professional for his PTSD on a monthly basis from January 2008 to the time of his termination in April 2010. At oral argument, plaintiff conceded that he would have been ineligible for coverage under the disability policy even if the IBU had managed to purchase a policy on the day Article 12(H)(2) was amended.

Plaintiff asserts that there is a genuine issue of material fact regarding his eligibility for coverage because his expert states that he "would likely have been covered by a disability policy had it been offered to him, both for short term and long term disability." Second Decl. of Mark Davis (Dkt. # 33), Ex. A at ¶ 9. Delving deeper into the expert's report reveals that she assumed that the IBU was under a duty to provide coverage prior to plaintiff's disability onset date and that plaintiff would have availed himself of the benefits of that coverage. Id., Ex. A at ¶ 14 n. 1, ¶ 15. Based on these assumptions, the expert then opines that plaintiff's circa 2005 diagnosis of PTSD would qualify as a disability under the policy. Id., Ex. A at ¶ 17. The Court has already found that the IBU reasonably interpreted the pre-2009 version of Article 12(H)(2), however, such that coverage did not have to be obtained prior to 2005. When considering whether plaintiff could have received benefits under a policy purchased after 2005, plaintiff's expert states that "[i]t is not entirely clear that Mr. Downer's PTSD would

considered a pre-existing condition within the meaning of the Standard LTD Policy." Id., Ex. A at ¶ 23. The source of the ambiguity is not apparent: plaintiff was receiving treatment for a disabling condition at the time the policy became effective, thereby triggering the pre-existing condition exclusion. In any event, plaintiff's expert is unable or unwilling to opine with the requisite degree of certainty that plaintiff would have been entitled to disability coverage under a policy which became effective after he was diagnosed with PTSD.

Because plaintiff has failed to show an entitlement to any wages, benefits, or insurance proceeds arising prior to his termination date, his wage claims under Washington law also fail.

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt. # 19) is GRANTED and plaintiff's motion for summary judgment (Dkt. # 27) is DENIED. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

Dated this 22nd day of September, 2011.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge